UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

LEKO  JONES,                              )
             Petitioner,                )
                           )
v.                                       )        NO. 2:03-CR-73
                           )        NO: 2:09-CV-009
UNITED STATES OF AMERICA,                 )        Judge Greer
             Respondent.              )

## <u>MEMORANDUM OPINION</u>

This matter is before the Court on the motion of the petitioner, Leko Jones ("Petitioner" or

"Jones"), pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct sentence, and his supporting

memorandum,  [Docs. 551, 552].  The United States has responded in opposition, [Doc. 565], and

Jones has filed a reply, [Doc. 570].  Jones also requests an evidentiary hearing.

Jones raises numerous claims of ineffective assistance of counsel which he numbers as

claims 1 through 9 in his memorandum.  The Court has reviewed the petition, the government's

response, petitioner's reply, transcripts and records of the prior proceedings, and the record as a

whole, and has concluded that the files and records in the case conclusively establish that the

petitioner is not entitled to relief under § 2255 as to all issues raised by him, except for the claim

numbered by him as 7 which claims ineffective assistance of counsel by failing to communicate a

plea agreement offered to petitioner and to give proper advice with respect to the possibility of

petitioner entering a guilty plea in the case without benefit of a plea agreement.  The Court has

concluded that the record likewise establishes that no evidentiary hearing is necessary with respect

to any of the claims, except for claim 7; therefore, the request for an evidentiary hearing will be

DENIED in part and GRANTED in part in that the Court will grant an evidentiary hearing as to

claim 7, appoint counsel to represent Jones on the single claim not conclusively resolved on the record and will order that Jones be returned to the district for such hearing.

This opinion and order will, therefore, dispose of all issues raised by Jones, save the one issue set forth above and, for the reasons which follow, all claims raised in petitioner's motion, except for number 7, lack merit and the motion will be DENIED as to those claims.

## I. **Procedural Background**

Jones was one of ten defendants indicted by the federal grand jury on September 23, 2003, in a 37 count indictment. All defendants were charged in Count 1 of the indictment with conspiracy to distribute and possess with the intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 846 and 841(a)(1). Jones was charged in counts 10, 14, 21, 22, 32, 33 and 34 with distribution of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), [Doc. 2]. Jones was convicted by a jury of counts 10, 14, 22, and 32-34 on October 26, 2004, and was found not guilty as to count 21, [Doc. 328]. A presentence investigation report ("PSR") was ordered and sentencing was set for January 24, 2005.

The PSR was disclosed to the parties on December 30, 2004. In the PSR, the probation officer grouped all counts of conviction pursuant to USSG § 3D1.2(d) and found a base offense level and total offense level of 34 pursuant to USSG § 2D1.1(c)(3) for at least 150 grams but less than 500 grams of cocaine base, [PSR, ¶¶ 21-31]. Petitioner was assessed 14 criminal history points which established a criminal history category of VI, [*Id.*, ¶ 47]. With a total offense level of 34 and a criminal history category of VI, the probation officer determined Jones' guideline range to be 262 to 327 months of imprisonment, [*Id.*, ¶ 74].

Defendant objected to the base offense level used by the probation officer, arguing that he

2

should be held accountable only for 11 to 25 grams of cocaine base. The petitioner's objection was overruled by the Court and the Court adopted the guideline range set forth in the PSR. After a sentencing hearing, Jones was sentenced to 327 months of imprisonment and five years of supervised release on April 18, 2005, [Doc. 424]. Judgment was entered on April 26, 2005, [Doc. 431]. Jones filed a timely notice of appeal and the Sixth Circuit affirmed his conviction and sentence on October 19, 2007, [Doc. 525]. No petition for certiorari was filed in the United States Supreme Court. Jones then timely filed the instant § 2255 motion on January 20, 2009, [Doc. 551].

The trial of this case took several days and numerous witnesses were called to testify throughout the course of the trial. The Court will not undertake to make any extensive recitation of the facts except as they relate to each particular claim made by the petitioner. A general summary of the facts is contained in section G below in connection with the Court's discussion of the sufficiency of the evidence in the case.

## II.     Standard of Review

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

3

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.

4

A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland* 466 U.S. at 687. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F. 2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner show counsel's deficient

performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized that both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

### III. <u>Analysis and Discussion</u>

As set forth above, Jones raises nine specific allegations of ineffective assistance of counsel. The Court will discuss each in turn.

### A. **Composition of Petit Jury (Claim No. 1)**

Petitioner, who is black, alleges that counsel was ineffective for failing to object to the impanelment of an all white jury or to object to the prosecution's use of peremptory challenges pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986). The government responds that the claim is insufficient on its face because the petition merely "summarizes legal principles," but "does not

identify either an allegedly improper use of a peremptory challenge during jury selection or provide any basis for arguing that the jury pool systematically excluded persons on the basis of race."

The Sixth Amendment requires that the jury venire from which a jury is selected represent a "fair cross-section" of the community. *Taylor v. Louisiana*, 419 U.S. 522, 527 (1975). In order to make a *prima facie* showing of a violation of the Sixth Amendment, a defendant must establish that: (1) The group alleged to be excluded is a distinctive group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of persons in the community; and (3) this under-representation is due to systematic exclusion of the group in the jury selection process. *Duren v. Missouri*, 439 U.S. 357 (1979); *United States v. Buchanan*, 213 F.3d 302, 308 (6th Cir. 2000), mandate recalled *United States v. Murray*, Fed. App'x 398 (6th Cir. 2001).

The Sixth Circuit Court of Appeals has had occasion previously to examine the jury selection procedure in this district under the above standards. In *United States v. Clark*, 112 Fed. App'x 481, 2004 WL 2299452 (6th Cir. (Tenn.)), vacated on other grounds, 545 U.S. 1101 (2005), a case originating in the Northern Division of this district, the defendant, on direct appeal, made the same challenge that petitioner Jones now makes. Finding no evidence that under-representation of blacks in Clark's jury venire resulted from "systematic exclusion," the Sixth Circuit held that Clark could not "establish a *prima facie* violation of his right to a jury panel composed of a fair cross-section of his peers." *Id.* at 486. While *Clark* involved a direct appeal, the Sixth Circuit has also ruled on the issue raised in the context of a § 2255 motion, a situation more clearly analogous to the instant one. In *Holmes v. United States*, 281 Fed. App'x 475, 2008 WL 2467978 (6th Cir. (Tenn.)), another case originating in the Knoxville Division of this Court, the petitioner made a claim of ineffective

7

assistance of counsel for failing to object to the venire panel. In view of the *Clark* decision, the Sixth Circuit held that "counsel's failure to raise a challenge to the jury venire was not deficient so as to constitute ineffective assistance of counsel . . . [e]ven though *Clark* was issued after Holmes' trial . . ." *Id.* at 480. The same is especially true here since *Clark* was decided before petitioner's trial and petitioner's argument lacks merit.

In *Batson v. Kentucky*, the Supreme Court held that a defendant opposing the government's use of a peremptory strike on the basis of race makes out a *prima facie* case of purposeful discrimination by showing:

> That he is a member of a cognizable racial group . . . that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race . . . [and] that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

*Batson*, 476 U.S. at 96. As noted above, the government argues that "there is nothing in the record to demonstrate any *Batson* error," citing *United States v. Collins*, 195 Fed. App'x 419, 422 (6th Cir. 2006) (where the record is silent as to "the race or ethnicity of any prospective juror," the court cannot ascertain whether a violation occurred). Jones replies that "sufficient facts are before the Court to establish a *prima facie* case for a *Batson* violation and further establishes facts that require the resolution in an evidentiary hearing." Jones' argument, however, is a non-starter. The record contains no facts, much less sufficient facts, from which the Court can determine whether a *Batson* violation has occurred. Nothing in the record establishes that the government even exercised peremptory challenges, much less that it exercised them to remove from the venire black prospective jurors on account of their race. It is petitioner's burden to plead facts, not conclusory statements unsupported by facts, in support of his motion. He has not done that here and this argument lacks

merit.

**B.     Multiple Conspiracies (Claim Nos. 2 and 4)**

Jones next claims that counsel was deficient by failing to argue that the evidence established multiple conspiracies given the number of government witnesses who testified as to drug trafficking. The government responds that Jones has not "identif[ied] or describe[d] any other conspiracy" or "how the evidence established that [Jones] participated in a conspiracy other than the one for which he was convicted." Jones replies with the conclusory argument that "counsel failed to investigate the issue of multiple conspiracies and to present the defense to the jury."

Petitioner's claim here fails for several reasons. First, the Court agrees with the government that petitioner has not made sufficient factual allegations which would even suggest that multiple conspiracies existed or that he was not guilty of the charged conspiracy. Secondly, it can hardly be argued that counsel's strategy of arguing that Jones was not involved in **_any_** conspiracy and that the government witnesses were lying was unreasonable or deficient under the circumstances of this case, especially given the practical difficulty of arguing before a jury that petitioner was not guilty of the charged conspiracy even though he might have been involved in another drug trafficking conspiracy or conspiracies not charged in the indictment.

Finally, even if counsel was somehow deficient, Jones suffered no prejudice. It is true that where one conspiracy is charged, "proof of different and disconnected ones will not sustain a conviction." *United States v. Bostic,* 480 F.2d 965, 968 (6th Cir. 1973). And, "a single conspiracy is not transformed into a multiple one simply by a lapse of time, change of membership, or a shifting emphasis on its locale of operations." *United States v. Sanchez*, 928 F.2d 1450, 1456 (6th Cir. 1991) (quoting *United States v. Heinemann*, 801 F.2d 86, 92 (2d Cir. 1986)). The same is true of multiple

9

players.  *United States v. Maliszewski*, 161 F.3d 992, 1015 (6th Cir. 1998).  Even if multiple

conspiracies existed in this case, proof that Jones was a member of some other conspiracy would not

prevent the jury from returning a guilty verdict, if the government proved he was also a member of

the conspiracy charged in the indictment.  See Sixth Circuit Pattern Jury Instructions Section 3.08

(2005 Ed.).

Here, it has already been conclusively established that the evidence was sufficient to sustain

Jones' conviction for the charged conspiracy.  As the government argues, Jones challenged the

sufficiency of the evidence supporting the conspiracy charged on appeal to the Sixth Circuit and the

Sixth Circuit found the evidence sufficient to permit a rational juror to find beyond a reasonable

doubt that the government had established the conspiracy.  *U.S. v. Smith,* 252 Fed. App'x 20, 23 (6th

Cir. 2007).  That there may have existed other conspiracies, even ones in which petitioner

participated, therefore, is not relevant.  Petitioner cannot not relitigate this issue.  *See DuPont v.*

*United States*, 76 F.3d 108, 110 (6th Cir. 1996) ("A § 2255 motion may not be used to relitigate an

issue that was raised on appeal absent highly exceptional circumstances." ) (citations omitted)).

Jones also raises a related issue in claim 4.  He asserts that counsel was ineffective by failing

"to question the government's witnesses to establish that multiple conspiracies existed . . ."  The

government characterizes this argument as a simple restatement of the above argument.  The Court

agrees with the government and this argument lacks merit for the reasons stated above.

Additionally, the claim fails because of petitioner's failure to support his conclusory allegations with

supporting factual allegations.  He does not identify the witnesses he faults counsel for failing to

properly cross-examine nor does he identify the nature of the testimony he believes should have

been elicited from those witnesses.  He simply leaves the Court to speculate about these matters and

this the Court will not do.

### C.    Potential Witnesses Hamilton and Crittle (Claim 3)

Jones argues that counsel was ineffective "by failing to investigate, interview, call and/or subpoena material witnesses to provide exculpatory evidence."  He identifies two witnesses and describes their anticipated testimony as follows:

> [a] Tiffany Hamilton, who could have, and would have, testified as to the circumstances unde[r] which Jones and Melissa Sutfin met, and further that Sutfin was involved in the distribution of cocaine and crack cocaine well before she ever met Jones, and further that, when Jones and Sutfin met, that Sutfin was in fact delivering drugs at that time.  Further Hamilton could have testified as to the time frame, which was April-May, 2002.

> [d]  Lisa Crittle, who could have, and would have testified that she knew Dwayne Norton, that Jones did not travel to North Carolina with Breeze and others, that Norton did not distribute cocaine crack in quantities he testified, that she was present when Breeze secured drugs from Norton, and that the quantities were no where near the quantities testified to.  This evidence was taken away from the jury.

[Doc. 552, pp. 14-15].  Jones claims the failure to call these witnesses left Jones "without any defense with which to impeach the government's witnesses with."

The government responds that the testimony of Hamilton and Crittle would have been cumulative at best and that the testimony of both would have inculpated Jones on cross-examination. The government further argues that the testimony would not have altered the jury's verdict.  Jones replies with conclusory arguments that "the failure of the government to submit any affidavit from counsel as to why he failed in this regard, requires an evidentiary hearing."

This claim fails for several reasons.  First of all, petitioner has not submitted any affidavit or other indication from these proposed witnesses about the actual content of their testimony or that

11

they were willing to testify. He also does not indicate that the proposed testimony, even if relevant, was based on the personal knowledge of the witnesses. Secondly, the Court agrees with the government that the testimony as described by Jones would have been largely cumulative and would not likely have changed the jury's verdict. For instance, the testimony of Hamilton, while it might have been used to impeach Sutfin, is not exculpatory to Jones. Crittle's testimony, at best, would have potentially impeached Dwayne Norton but it is difficult for the Court to see how the testimony would have helped Jones. Once again, the proposed testimony is not exculpatory as to Jones and it also verifies to some extent Norton's actual testimony. Further, there is no indication that Crittle could in fact have testified from personal knowledge that Jones never traveled to North Carolina with Breeze and others as asserted in the petition. Even if counsel's performance was somehow deficient as related to the failure to call these two witnesses, relief will not be granted unless the petitioner was actually prejudiced. *Harbison v. Bell,* 408 F.3d 823, 830 (6th Cir. 2005). Jones here makes, at best, bare allegations of prejudice and makes no showing, even if the testimony would have been favorable or helpful to him, that there is a reasonable probability that the outcome of the trial would have been different had these two witnesses been called to the witness stand. On this record, the record clearly and conclusively shows that Jones is not entitled to relief.

### D. Jones' Criminal Record (Claim 5)

Jones' criminal record included numerous juvenile offenses committed between the ages of nine (larceny) and 15 (weapon on campus, larceny, assault with a deadly weapon). Two criminal history points were assessed pursuant USSG § 4A1.2(c)(3) for each of the two convictions at age

15.[1] No criminal history points were assessed for any of the other juvenile convictions. Petitioner alleges that counsel was ineffective for failing "to seek the sealing of the juvenile records [which] caused Jones to be assessed 4 criminal history points that should have been precluded." He also seems to fault counsel for failing to object to the assessment of the four points in the district court, leading to plain error review in the Sixth Circuit and a determination that petitioner had waived any objection. The government responds that the Sixth Circuit reviewed, applying a plain error standard, and rejected the argument by petitioner that criminal history points were erroneously assessed for his juvenile convictions.

Once again, the government is correct. On appeal, the issue was reviewed for plain error, with the Sixth Circuit finding that juvenile commitments are considered "confinement" and are assessed criminal history points, citing USSG § 4A1.2(d)(2)(A) and *United States v. Williams*, 176 F.3d 301 (6th Cir. 1999). In *Williams*, the Sixth Circuit held that juvenile commitments are counted toward a defendant's criminal history score under the plain language of the guidelines. *Williams*, 176 F.3d at 311-12. Counsel's performance in failing to object to the assessment of these four criminal history points was in no way deficient. In any event, as noted above, the issue, having been decided by the Sixth Circuit on appeal, cannot now be relitigated by the petitioner.

Jones does not develop his argument that counsel was ineffective for failing to seek the sealing of his juvenile records, apparently to prevent their discovery by the probation officer preparing the PSR. The Court therefore will spend little time on the argument, except to note that appointed CJA counsel who represented Jones in this case did not represent him in those juvenile

---

[1] Jones incorrectly asserts that his "only criminal history was a juvenile record." In reality, he received 14 total criminal history points based on an extensive adult and juvenile criminal record, resulting in a criminal history category VI.

proceedings. Petitioner offers no facts which would establish deficient performance on the part of counsel or how any action taken or not taken by him would have prevented the assessment of criminal history points for these juvenile convictions. This issue is without merit.

### E. Jones' Failure to Testify at Trial (Claim No. 6)

In this claim, Jones alleges that his Sixth Amendment right to testify in his own behalf was violated "by counsel's failure to allow him to testify, when he clearly stated that he wanted to testify." According to Jones, he made his desire to testify clearly known to his attorney but "counsel simply refused to call him to the stand." Jones relies on an Eleventh Circuit case, *Nichols v. Butler*, 953 F.2d 1550 (11th Cir. 1992), and several district court cases from outside the Sixth Circuit in support of his claim.

These out of circuit cases, however, are not binding in this Court and petitioner's argument is squarely foreclosed by the recent Sixth Circuit decision in *United States v. Stover*, 474 F.3d 904 (6th Cir. 2007). Quoting *United States v. Webber*, 208 F.3d 545 (6th Cir. 2000), the Sixth Circuit stated:

> Although the ultimate decision whether to testify rests with the defendant, when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed. [*United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993)] . . . . Barring any statements or actions from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to *sua sponte* address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor insure that the defendant has waived the right on the record. *Joelson*, 7 F.3d at 177. *See also United States v. Ortiz*, 82 F.3d 1066, 1069 n.8 (D.C. Cir. 1996) (noting the agreement of the First, Third, Fifth, Seventh, Ninth, Tenth and Eleventh Circuits that the trial court does not have a duty to *sua sponte* conduct an on-the-record colloquy regarding waiver) . . . .
> A defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with

14

> the trial court, or discharging counsel. *Joelson*, 7 F.3d at 177. At base, a defendant must "alert the trial court" that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand. *Pelzer v. United States*, 105 F.3d 659 (table), 1997 WL 12125, at *2 (6th Cir. Jan. 13, 1997) (unpublished). When a defendant does not alert the trial court of a disagreement, waiver of the right to testify may be inferred from the defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so. *Joelson*, 7 F.3d at 177.

*Stover*, 474 F.3d at 909 (quoting *Webber*, 208 F.3d at 551).

Jones did nothing to alert the Court to his desire to testify and the Court was under no duty to inquire. The Court, therefore, correctly presumed that petitioner waived his right to testify. Jones likewise did nothing to alert the Court to any disagreement with counsel over his desire to testify. For these reasons, this claim lacks merit.

Nor can it be said that counsel's advice that Jones not testify was in any way deficient. Jones appears to have had numerous adult and juvenile convictions involving dishonesty which could have been used by the government to impeach and which would likely have undermined Jones' credibility substantially. Under these circumstances, it might have been ineffective assistance of counsel if counsel had in fact not advised petitioner of the risk of testifying under the circumstances. It clearly was not deficient performance to do so.

**F.      Reasonableness of Sentence (Claim No. 8)**

Jones next argues that counsel was ineffective for failing to object to the reasonableness of his sentence based on the 100 to 1 disparity of treatment between powder cocaine and crack cocaine which then existed in the sentencing guidelines. The transcript of the sentencing hearing reflects that counsel did in fact argue vigorously for a below guidelines range sentence and that the Court acknowledged as a possible mitigating factor the disparity between powder and crack cocaine cases,

15

which the Court found to be unwarranted.  Although the Court specifically found the unwarranted disparity to be a mitigating factor in selecting petitioner's sentence, that factor was, in the Court's view, outweighed by petitioner's extensive criminal history, especially that involving violence and possession of weapons, his lack of respect for the law, the apparent lack of amenability to rehabilitation, and the need to protect the public.  The Court found that the combination of all these factors justified a sentence at the top of the guidelines range.

This argument fails because the Court actually considered and ultimately rejected the crack/powder cocaine disparity.  Even if counsel was somehow deficient in failing to argue for a lower sentence based on the disparity, petitioner cannot show that he was prejudiced in any way [2] since the Court actually considered the disparity as a mitigating factor.

### G.    Ineffective Assistance of Counsel on Appeal (Claim No. 9)

Jones claims that his counsel on appeal was ineffective in two ways: (1) by failing to challenge the sufficiency of the evidence on the conspiracy charge, and (2) by failing to object to the assessment of four criminal history points for the two juvenile convictions discussed in section III.D. above.  These claims fail because, as discussed above, there was no error in the assessment of criminal history points and the evidence was clearly sufficient to sustain the conviction on the conspiracy charge.  In a criminal case, the evidence is sufficient if "viewing the evidence in the light most favorable to the prosecution, any rational trier of facts could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United*

---

[2]    As the government points out in its response to Jones' motion, Jones also has a pending motion for sentence reduction pursuant to 18 U.S.C. § 3582(c) based on Amendment 750 to the United States Sentencing Guidelines which retroactively lowered the guidelines range for crack cocaine offenses.  The Court will address that motion by separate order.

*States v. Ward*, 190 F.3d 483, 487-88 (6th Cir. 1999) (denying motion for acquittal where although evidence implicating defendants in a drug conspiracy was "meager," testimony was nevertheless sufficient), *cert. denied*, 528 U.S. 1118 (2000)). "[E]ven circumstantial evidence standing alone may sustain a conviction so long as the totality of the evidence was substantial enough to establish guilt beyond a reasonable doubt." *United States v. Phibbs*, 999 F.2d 1053, 1074 (6th Cir. 1993), *cert. denied*, 510 U.S. 1119 (1994). The Sixth Circuit has also held that "the uncorroborated testimony of a single accomplice may support a conviction under federal law." *United States v. Gallo*, 763 F.2d 1504, 1518 (6th Cir. 1985), *cert. denied*, 475 U.S. 1017 (1986). Generally, "credibility of witnesses is exclusively the province of the jury." *United States v. Bond*, 22 F.3d 662, 667 (6th Cir. 1994). As set forth above, Jones and nine co-defendants were charged in count 1 of the indictment with conspiracy to distribute and possess with intent to distribute 50 grams or more of crack cocaine. The elements of that offense which the government was required to prove beyond a reasonable doubt are: "(1) An agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy." *Smith*, 252 Fed. App'x at 22 (quoting *United States v. Gibbs*, 182 F.3d 408, 420 (6th Cir. 1999)) (citation omitted).

As noted by the Sixth Circuit on direct appeal, during petitioner's trial the government presented numerous witnesses "whose testimony established that Wilkins and Jones worked together and with others to bring crack cocaine into Johnson City, Tennessee, break it up for resale, and sell it on the street." While petitioner obviously challenges the credibility of the government's witnesses, his own recitation of the facts in his memorandum in support of the motion illustrates the sufficiency of the evidence. Even taking the evidence in the favorable light presented by Jones, those facts establish the following: Isaac Cousins met Jones in 2001 and supplied Jones with eight-

balls of crack cocaine three or four times a week for approximately four months. Alexander Poole sold eight-ball quantities of crack cocaine to Jones at least three times a week for approximately five months. Melissa Sutfin was present when Jones and others "cut" and split four to five ounces of crack cocaine and she sometimes held crack for Jones. Sutfin also traveled with Jones to North Carolina in 2002 to purchase more than one-half ounce of crack cocaine and made eight to ten additional trips with Jones for the same purpose. Jason Graves began selling crack cocaine to Jones in 2001; he, Jones and others pooled their money to purchase crack cocaine and he and Jones made four or five trips to purchase between two and three ounces of cocaine on each occasion. Jonathan Breeze dealt drugs with all of the defendants on trial in the case. Dwayne Lamar Norton, between July and November, 2007, sent approximately four kilograms of crack cocaine to Johnson City, Tennessee to various of the co-defendants. Lisa Garland, a confidential informant, purchased crack cocaine from Jones on June 28, 2002, August 22, 2002 and August 29, 2002. Roger Greenwell, another confidential informant, purchased crack cocaine from Jones on March 31, 2003, April 1, 2003 and April 7, 2003. [3]

Not only is this evidence sufficient to support the conviction on the conspiracy charge, it is overwhelming. While the credibility of the witnesses may have been at issue, it was the jury's province to believe them or not. Counsel can hardly be faulted for failing to raise a sufficiency of the evidence issue on appeal where the sufficiency of evidence is so obviously sufficient to sustain the conviction. While appellate counsel prejudices a client where the attorney fails to raise a meritorious claim on direct appeal where the error would have altered the outcome of the trial,

---

[3] Interestingly, Jones does not claim that the evidence was insufficient to convict him of the substantiative charges of distribution of crack cocaine on these dates. Those sales, in and of themselves, are evidence of the existence of the charged conspiracy.

*Ballard v. United States*, 400 F.3d 404, 409 (6th Cir. 2005), counsel is not required to raise non-meritorious issues. Counsel was clearly not required to raise sufficiency of the evidence as an issue on appeal here.

### G.     Advice Related to Guilty Plea and Plea Agreement (Claim 7)

Finally, Jones claims that he was denied effective assistance of counsel "by counsel's failure to investigate and to advise Jones as to what pleas to enter."[4]   In reality, it appears that Jones claims that a government plea offer was not "adequately and fully" communicated to him and that he was erroneously told by counsel that if he pled guilty "he would have to testify for the government." He also makes the following, somewhat nonsensical claim: "Jones avers that, had he been advised that he could have a plea testifying, that he would have plead guilty and not have proceeded to a jury trial." In his affidavit, Jones states that counsel "never advised [him] of any plea offer," but that counsel did advise him that he would have to testify in order to plead guilty. The government simply responds that the offer extended by the government did in fact require Jones to cooperate, and attaches a copy of the proposed plea agreement to its response; thus, according to the government, counsel was correct in her representations to Jones.

The right to effective assistance of counsel extends to plea negotiations. *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) ("Defendants have a constitutional right to effective assistance of counsel during plea negotiations."). "A defense attorney's failure to notify his client of a prosecutor's plea offer constitutes ineffective assistance of counsel under the Sixth Amendment and satisfies the first element of the *Strickland* test." *Griffin v. United States*, 330 F.3d 733, 737 (6th

_____

[4] Jones asserts in one sentence as part of this same claim that "counsel should have advised him to testify." This single sentence appears to have nothing to do with the claims raised, is not for the developed, and will not be addressed by the Court.

Cir. 2003) (citing *Turner v. State*, 858 F.2d 1201, 1205 (6th Cir. (1998)).

Thus, if Jones can establish that the government extended a plea offer that counsel failed to communicate to him, he will have established the first prong of the *Strickland* test as to this claim. The government does not dispute that it extended an offer; the government has not, however, submitted the affidavit, declaration or other evidence from counsel that the offer was in fact communicated to Jones. On the other hand, Jones states unequivocally that his attorney "never advised me of any plea offer of the government." And, he also asserts that, had he been so advised, "[he] would have plead guilty."

The second prong of the *Strickland* test, *i.e.* prejudice, can be established if the defendant can show "that there [was] a reasonable probability [he] would have pleaded guilty given competent advice." *Griffin*, 330 F.3d at 737. Once again, Jones unequivocally so stated in his affidavit and the government has made no attempt in its response to rebut the allegation. Although the government suggests that there is no prejudice because petitioner received an otherwise fair trial, the Sixth Circuit has rejected that view as too limited a view of what constitutes prejudice. *Cooper v. Lafler*, 376 Fed. App'x 563, 2010 WL 1851348 (C.A. 6 (Mich.)). [5]

As noted above, Jones makes one other claim related to the possibility that he might plead guilty and receive a lower sentence. He claims, in his memorandum, that he was advised by counsel that in order to plead guilty, with or without a plea agreement, he was required to testify for the government. He specifically alleges that he was never advised that he could plead guilty without a plea agreement and benefit from a reduction in his offense level and therefore his guidelines

---

[5] The United States Supreme Court has granted a petition for writ of certiorari in the *Cooper* case but has not yet rendered a decision. 131 S. Ct. 856 (2011).

calculation based upon acceptance of responsibility. The government does not address this claim at all in its response.

Because the files and records of the case do not conclusively establish that Jones is not entitled to relief on this issue, the Court will grant an evidentiary hearing on this issue, will appoint counsel to represent Jones at that evidentiary hearing, and will order that the United States Marshal return Jones to the district for that evidentiary hearing. A separate order on those matters will enter.

## IV.    Conclusion

For the reasons set forth herein, the petitioner's § 2255 motion lacks merit as to all issues except for the issue raised in the preceding section and the petitioner's motion will be DISMISSED as to those claims. The Court will reserve decision on the remaining claim raised by the petitioner until after an evidentiary hearing can be conducted. The Court will then enter an appropriate judgment and will address whether petitioner should be granted a certificate of appealability on any issues in this case.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE